CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 9 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JEFFREY DWAYNE JONES, | ) | |
|     Petitioner, | ) | Civil Action No. 7:05CV00299 |
| | ) | Crim. No. 1:03CR00123 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. James C. Turk |
|     Respondent. | ) | Senior United States District Judge |

Petitioner, Jeffrey Dwayne Jones ("Jones" or "Petitioner"), a federal inmate proceeding *pro se*, brings this action as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. Petitioner challenges the validity of his 2004 conviction and sentence in which he pled guilty to two counts of a six count indictment: (1) Count I, Conspiracy to possess with intent to distribute 50 grams or more of methamphetamines, 21 U.S.C. § 846; and (2) Count III, Possessing, using, or carrying of a firearm in relation to or in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c).

I.   **Statements of the Facts**

On October 22, 2003, law enforcement officials executed a search warrant at the residence of the Petitioner, located in Max Meadows, Virginia. During the course of the search, approximately one ounce of methamphetamines, $5,900 dollars in cash, two pistols, and various drug paraphernalia were recovered. After being advised of his Miranda rights, Jones stated that he had been dealing methamphetamines for approximately 16 months and stated that he had sold or traded an estimated 16 pounds of methamphetamines during that period. He also stated that the two pistols that were recovered were accepted as payment in a barter for methamphetamines.

1

## II. Procedural History and Claims

On December 18, 2004, a federal grand jury in the Western District of Virginia returned an indictment charging Petitioner with: (1) Count I, Possession with intent to distribute 50 grams or more of methamphetamines, in violation of 21 § U.S.C. 841(a)(1) & 846; (2) Count II, Possession with intent to distribute methamphetamines, in violation of 21 U.S.C. § 841(a)(1); (3) Counts III, IV, & V, Possession of a firearm in furtherance of a drug trafficking crime (on separate occasions for each count), in violation of 18 U.S.C. § 924(c); and (4) Count VI, Possession of firearm(s) while being an unlawful user of a controlled substance; in violation of 18 U.S.C. § 922(g)(3). The Petitioner was represented by Randy Jones during the criminal proceedings.

Subsequently, the Government extended a plea offer to Petitioner. The plea offer stated that if Jones pleaded guilty to Counts I & III of the indictment, the Government would drop the rest of the counts against him. The plea offer also stated that Jones would have to waive his right to collaterally attack the judgment or sentence imposed upon him. After reviewing the terms of the entire plea offer with his counsel, Jones agreed to the plea offer's terms.

On March 3, 2004, Petitioner went before the trial court to plead guilty according to the terms of the plea agreement. Jones's counsel stated to the court that the Petitioner did not "read too well." See Transcript of Jones's Guilty Plea Hearing on March 3, 2004 at 8. The court asked Jones whether he had gone over the plea agreement with his counsel and whether he understood its terms, to which he stated that he did. Id. at 8-9. The court then conducted a Rule 11 colloquy and inquired whether the defendant understood the charges to which he was pleading, the maximum penalty for each charge he was pleading to, that the court is not bound by the plea agreement in fashioning an appropriate sentence, and the rights which he was waiving by pleading guilty; Petitioner answered

2

that he did understand. Id. at 11-17. In addition, the court inquired as to whether he was coerced in anyway to plead guilty and whether any promises were made to him as to the specific sentence that would be imposed upon him; Jones answered in the negative. Id. at 10-13. The court was satisfied that Jones's guilty plea was voluntary and intelligent and accepted his guilty plea.

On May 12, 2004, the court sentenced the Petitioner. Under the charges to which Jones pleaded and with a reduction for acceptance of responsibility, he was sentenced to the low-end of the United States Sentencing Guidelines punishment range. He was sentenced to 135 months incarceration on Count One and 60 months for Count Three, to run consecutively.

On May 12, 2005, Petitioner filed this § 2255 motion. Jones's motion to vacate, set aside, or correct his sentence is based on four claims: (1) Ineffective assistance of counsel in violation of his Sixth Amendment rights; (2) Incorrect calculation of petitioner's sentence under the Advisory Federal Sentencing Guidelines; (3) Prosecutorial misconduct; and (4) Unknowing and involuntary guilty plea because he was legally incompetent due to his illiteracy.

The Government has moved to dismiss Jones's §2255 motion. In response, Jones has submitted an affidavit by his attorney, Randy Jones, whom represented Petitioner during the plea and sentencing proceedings. Petitioner has also submitted a document that shows the results of the Adult Basic and Literacy Education ("ABLE") test he took while incarcerated. The Government has submitted a copy of Petitioner's plea agreement. Due to the submission of such evidence outside of the pleadings, the Government's motion to dismiss will be converted into motion for summary judgment under FED. R. CIV. P. 56.

Upon motion for summary judgment, the Court must view the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus.

3

Case 7:05-cv-00299-JCT-mfu   Document 21   Filed 01/09/06   Page 3 of 17   Pageid#: 81

Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236-7 (4th Cir. 1995). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The Government contends that Petitioner cannot collaterally attack his conviction and sentence because he has waived his right of collateral attack under the plea agreement. Such waiver, however, is invalid and does not affect his right of collateral attack, if Jones was legally incompetent to agree to the terms of the plea offer and plead guilty. Thus, the issue of Jones's legal competency will be discussed first.

### III. Opinion of the Court

    **A.    Petitioner's Claim that His Guilty Plea and Acceptance of the Plea Agreement was Not Knowing and Voluntary Because He was Legally Incompetent**

Jones contends that the district court erred when it accepted his guilty plea and sentenced him under the plea agreement because there was reasonable cause to believe that he was legally incompetent at the time of those proceedings.[1] See Roach v. Martin, 757 F.2d 1463, 1480 (4th Cir. 1985) (stating that due process requires a defendant be legally competent to plead guilty). Competency claims can raise both procedural and substantive due process issues. Beck v. Angelone,

---

[1] The precedent of United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005) does not affect the Petitioner's ability to collaterally attack his conviction based on a claim of incompetency because a waiver of collateral-attack rights is invalid if made unknowingly or involuntarily, as in the situation of a waiver made by a legally incompetent defendant. Id. at 220.

4

261 F.3d 377, 387 (4th Cir. 2001); see also Vogt v. United States, 88 F.3d 587, 590-91 (8th Cir. 1996) (noting that substantive due process prohibits the conviction of a defendant that is mentally incompetent, while procedural due process requires a competency hearing be held when there is reasonable doubt as to a defendant's mental competency). An allegation that the district court erred by failing to order a competency hearing is a "procedural competency claim." United States v. General, 278 F.3d 389, 396 (4th Cir. 2002). An allegation, on the other hand, that the defendant was convicted or sentenced while legally incompetent is a "substantive competency claim." Id. Jones has asserted both substantive and procedural competency claims and, thus, each claim will be analyzed.

Congress has established a statutory framework to protect legally incompetent defendants from due process violations. See 18 U.S.C. § 4241. The legal standard applied to analyze a substantive competency claim versus a procedural claim differ. To show incompetence to plead guilty, a defendant must demonstrate that his mental faculties were so impaired when he pleaded that he was incapable of understanding and appreciating the charges against him, of comprehending his constitutional rights, and of realizing the consequences of his plea. See Roach, 757 F.2d at 1480. Cf. Shaw v. Martin, 733 F.2d 304, 314 (4th Cir. 1984) (holding that the standard of competence to plead guilty parallels the standard of competence to stand trial). The defendant claiming that he is legally incompetent must prove it by a preponderance of the evidence. See General, 278 F.3d at 396; see also Cooper v. Oklahoma, 517 U.S. 348, 362, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996) ("Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.").

### 1. Substantive Competency Claim

Jones asserts that he is legally incompetent because he is illiterate. As proof of his illiteracy, Jones has proffered the results of the ABLE test he took while incarcerated. Jones's ABLE test scores reveal that he has the reading comprehension level of a second-grader. See Jones's Student Profile/Pre-Test Scores Form. No other evidence of incompetency was provided other than Jones's bald assertion that his illiteracy is a learning disability that gives him a "child-like" understanding of things. See Jones's Motion under 28 U.S.C. § 2255 at 4. Assuming that the defendant's assertion that he is illiterate is true, he has still failed to meet his burden of proving mental incompetence.

Illiteracy is a factor that can contribute to a determination of incompetence, however, it cannot be the sole source of incompetence. Legal incompetence is defined as a condition in which the defendant's mental faculties are impaired to the point where he is unable to understand and appreciate the charges against him and realize the consequences of his actions. See Roach, 757 F.2d at 1480. Although illiteracy may prohibit a defendant from understanding and appreciating written communications, it does not, standing alone, inhibit a defendant who has no history of mental retardation (or other mental illnesses that affect a person's faculties) from understanding verbal communications. The Court agrees with precedent from other circuit courts that hold that illiteracy does not invariably equate with legal incompetence. See, e.g., Smith v. Newsome, 876 F.2d 1461, 1465 (11th Cir. 1989) ("But a person's being illiterate does not mean that the person lacks good sense. Nor does lack of formal education make a person mentally incompetent.")

The defendant has not alleged that he is mentally retarded or suffers from any other mental illness that may affect his faculties for understanding verbal communications. The defendant, however, alleges that he has a "'child like' understanding of what little he does read and is told."

6

See Jones's Motion under 28 U.S.C. § 2255 at 4. Essentially Jones contends that because of his illiteracy, he is uneducated and was therefore unable to understand, appreciate, and realize the consequences of his guilty plea. Low intelligence, however, is not the invariable equivalent of mental incompetency. See McCune v. Estelle, 534 F.2d 611, 612 (5th Cir. 1976). Mere bald assertions of illiteracy or low intelligence, without more, does not prove by a preponderance of the evidence that a person is mentally incompetent. See Smith, 876 F.2d at 1465 ("[N]ot every mental deficiency amounts to incompetency.").

Analogously, whether a defendant's guilty plea is knowing, voluntary, and competent, parallels the analysis of whether a person has knowingly, voluntarily, and intelligently waived a constitutional right, such as his Fifth Amendment Miranda rights. No one factor is dispositive in determining whether a defendant's guilty plea is competent and, similarly, a totality of the circumstances analysis is utilized in the context of whether a person has waived his Miranda rights. See Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986) (holding that a court can properly conclude that Miranda rights have been waived only if the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension). Case law concerning waiver of Miranda rights has similarly rejected the notion that a person cannot knowingly and intelligently waive his constitutional right to remain silent solely because he is illiterate or has sub-par intelligence. See Vance v. Bordenkircher, 692 F.2d 978, 980 (4th Cir. 1982) (holding that defendant with an I.Q. of 62 made a knowing and voluntary waiver of his rights and his confession was valid); United States v. Young, 529 F.2d 193, 195 (4th Cir. 1975) ("While defendant . . . had a below-average I.Q., limited education, and reading problems, these factors are not in themselves determinative of the voluntariness of a waiver . . . ."); see also United States v. Gaines, 295 F.3d 293,

7

299 (2d Cir. 2002) ("[A]n inability to read or write does not, by itself, establish that the suspect is incapable of making a voluntary and intelligent decision."); United States v. Male Juvenile (95-CR-1074), 121 F.3d 34, 40 (2d Cir. 1997) (holding that even though the defendant had a host of attentional and learning disabilities, the evidence did not indicate that he could not comprehend the rights that were explained and read to him); Henderson v. DeTella, 97 F.3d 942, 948-49 (7th Cir. 1996) (upholding the trial court's decision that the defendant, whom had below-average I.Q. and limited reading abilities, voluntarily, knowingly, and intelligently waived his Miranda rights).

The reason why illiteracy or sub-par intelligence does not foreclose the possibility of a competent guilty plea or intelligent waiver is that no direct correlation or causation exists between the inability to read or write and a diminished capacity for verbal comprehension. If the defendant can understand and appreciate the charges against him and its consequences by verbal communication, then his illiteracy does not hamper his ability to make a competent plea.

Furthermore, it does not necessarily follow that a person lacking the aptitude of a high school graduate is incapable of understanding crime and punishment and the consequences that flow from his conduct. Jones understood the charges he pled to.[2] The core issue that Jones sets forth is that he did not think the sentencing court would incarcerate him as long as it did. Jones told the court under oath that he understood the maximum penalty that he could receive for the charges to which he pled. The fact that his estimate of what the court would sentence him to was incorrect, does not

---

[2] Jones's after-the-fact assertion that "no one realized that they would [sentence him for 60 months on the possession of a firearm charge]," see Jones's Motion under 28 U.S.C. § 2255 at 5, is contradictory to his answer to the court's Rule 11 colloquy that he understood that he was pleading guilty to possession of a firearm in furtherance of a drug trafficking crime and that he understood that such a crime can carry a maximum penalty of life imprisonment. See Transcript of Jones's Guilty Plea Hearing on March 3, 2004 at 8-9.

8

give rise to the assertion that he lacked the competency to make the decision to plead.

## 2. Procedural Competency Claim

In addition, Section 4241 imposes a procedural right that protects defendants from being convicted if legally incompetent by requiring the district court to *sua sponte* order a competency hearing if reasonable cause exists as to question the defendant's competency. See General, 278 F.3d at 396. Whether reasonable cause exists is a matter left to the discretion of the trial court. Id. A court reviewing the trial court's exercise of discretion cannot substitute its own judgment; rather, it must determine whether the trial court's exercise of discretion was arbitrary and capricious when considering the law and facts. Id.

In determining whether there is reasonable cause to order a competency hearing, the trial court must consider all the evidence before it, including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's incompetence. See United States v. Mason, 52 F.3d 1286, 1290 (4th Cir. 1995). The trial court must look at the record as a whole and accept as true all evidence of possible incompetence in determining whether to order a competency hearing. Id. Neither Jones or his counsel requested a competency hearing or introduced medical evidence of Jones's incompetence before or during the plea hearing. Thus, the only evidence that the trial court had before it to determine whether reasonable cause existed to order a competency hearing was Jones's behavior and his responses to the Court's questions during the plea hearing.

Before accepting a guilty plea, the district court is required to determine whether the defendant is competent to enter a plea and whether the plea is knowing and voluntary. See FED. R. CRIM. P. 11; see also Godinez v. Moran, 509 U.S. 389, 396-400, 113 S. Ct. 2680, 125 L. Ed. 2d 321

9

(1993). Whether a plea is knowing and voluntary and made by a competent defendant can be elucidated through a satisfactory Rule 11 colloquy. At the plea hearing, Jones's attorney raised the issue of the defendant's illiteracy. See Transcript of Jones's Plea Hearing on March 3, 2003 at 8. The court inquired as to whether Jones had reviewed the plea agreement with his attorney and he stated that he had. Id. The court also made a specific inquiry to the Petitioner about whether he was able to understand the plea agreement and whether his illiteracy would affect his ability to understand and comprehend his decision to plead and its consequences. Id. at 8-9. The defendant answered that his illiteracy would not affect his ability to understand the plea terms and to plead guilty. Id.

The defendant's demeanor and behavior were not out of the ordinary and he responded to each of the court's Rule 11 colloquy with a satisfactory answer. No evidence existed before the court that would have undermined the belief that the defendant was capable of understanding verbal communications and that the defendant, was in fact, comprehending the charges and consequences to which he pled and their consequences. In spite of Jones's illiteracy, no reasonable cause existed for the court to order a competency hearing before accepting his plea, because Jones's behavior and responses to the court's question did not reveal any evidence to intimate that he was unable to verbally understand and comprehend the proceedings before him and make a knowing and voluntary decision to plead guilty.

### B. Petitioner's Remaining Claims to Collaterally Attack His Conviction and Sentence

The guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. United States v. Lemaster, 403 F.3d 216, 219 (4th Cir. 2005).

Just as criminal defendants may waive constitutional procedural rights, so to, may they waive statutory procedural rights, such as the right to collaterally attack their conviction and sentence. Id. at 220. The advantages of plea bargains can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality. Id. at 219-20. The decision to waive a defendant's right to collaterally attack his guilty plea and sentence will only be set aside if the plea was given unknowingly and involuntarily. Id. Although Jones asserts that he did not make a voluntary and knowing plea, the responses he gave under oath in open court during the plea and sentencing proceedings, belie his contentions.

During the plea hearing, in response to the court's inquiries, Jones answered in the affirmative that he was pleading guilty to two charges: (1) Count I for conspiracy to possess with intent to distribute and to distribute more than 50 grams of methamphetamines; and (2) Count III for using, carrying, or possessing a firearm in relation to or in furtherance of a drug trafficking crime. See Transcript of Jones's Guilty Plea Hearing on March 3, 2004 at 8. Jones answered in the affirmative that he understood the minimum and maximum penalties of the charges he was pleading to. Id. Jones answered in the affirmative that he understood that the court could punish him with the maximum time of incarceration allowed and that the court was not bound by the plea agreement in imposing his sentence. Id. at 9-10. Jones stated that he reviewed the plea agreement with his attorney and understood it. Id. at 8-9. In addition, Jones answered in the negative as to whether any promises were made to him as to the exact sentence he would receive. Id. at 10-11. Jones also stated that he understood the terms of the plea agreement which include the waiver of his collateral-attack rights. Id. at 16. Jones answered in the affirmative that his plea was being made knowingly and voluntarily. Id. at 10-11.

Jones's sworn and competent statements contradict any assertion that he did not make his plea knowingly and voluntarily.[3] A defendant's solemn declaration in open court affirming a plea agreement carries a strong presumption of verity because courts must be able to rely on the defendant's statements under oath during a properly conducted Rule 11 colloquy. Lemaster, 403 F.3d at 221. Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. Id.

Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and the district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Id. at 221-22. Because Jones, under oath, stated that he was making his plea knowingly, voluntarily, and without disadvantage from his illiteracy, his guilty plea and, thus, his waiver of collateral-attacks rights is valid.

### 1. Jones's Claim of Ineffective Assistance of Counsel

A general waiver of collateral-attack rights will effectively prohibit most claims that a petitioner may raise in a motion for post-conviction relief. There are a narrow class of claims, however, that are most likely not subject to a general waiver provision as the one to which Jones agreed.[4] One such claim that may not be subject to a general collateral-attack waiver is a claim of

---

[3] Jones's assertion that his plea was not knowing and voluntary because he was incompetent has been deemed to be without merit.

[4] The Lemaster court notes that a general waiver of appellate rights does not encompass a waiver of a direct appeal based on a claim of deprivation of counsel, see United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994), or a claim of a sentence imposed in excess of the maximum statutory penalty or through use of a constitutionally impermissible factor, see United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). See Lemaster, 403 F.3d at 220 n.2. Although the Fourth Circuit has not considered whether there are certain claims exempt from a waiver of collateral-attack rights, the

ineffective assistance of counsel that bears of the validity of a guilty plea. Cf. United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994) (holding that a general waiver of direct-appeal rights does not waive a claim predicated upon deprivation of counsel).

To prove that Jones's counsel's assistance was so defective as to require reversal of his conviction or sentence, he must meet a two prong standard, showing both counsel's defective performance and resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show defective performance of counsel, Jones must show that his "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88.

Jones contends that his counsel was defective because counsel did not inform him that he would be sentenced to a consecutive five-year mandatory term on the charge of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). Again, Jones' contention of ignorance in his § 2255 motion contradicts the responses he gave to the trial court during the plea hearing. Jones answered in the affirmative that he was pleading guilty to Count III of his indictment for using, carrying, or possessing a firearm in relation to or in furtherance of a drug trafficking crime. See Transcript of Jones's Guilty Plea Hearing on March 3, 2004 at 8. Jones answered in the affirmative that he understood the minimum and maximum penalties of the charges he was pleading too. Id. Jones answered in the affirmative that he understood that the court could punish him with the maximum time of incarceration allowed and that the court was not bound by the plea agreement

---

Lemaster court, in dicta, indicates that there is "no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. Therefore, the Court will recognize that claims exempted from a general waiver of direct-appeal rights are also exempt from a general waiver of collateral-attack rights.

13

in imposing his sentence. Id. at 9-10. Jones stated that he reviewed the plea agreement with his attorney and understood it. Id. at 8-9.

Jones's responses to the court's questions clearly indicate that he and his attorney had reviewed the charges that he was pleading to, which included the charge of possession of a firearm in furtherance of a drug trafficking crime and that he understood the minimum and maximum potential punishment for the charge. Cf. Lemaster, 403 F.3d at 221 (holding that a defendant's solemn declaration in open court affirming a plea agreement carries a strong presumption of verity because courts must be able to rely on the defendant's statements under oath during a properly conducted Rule 11 colloquy). Thus, Jones offers no credible evidence to suggest why he should not be bound by the statements he made under oath in court.

### 2. Jones's Claim of Prosecutorial Misconduct

Jones also claims that his conviction was involuntary because he was coerced into the guilty plea by improper threats by the Government. The Fourth Circuit has not passed on whether such a claim would fall into a category exempted from a general waiver provision. Even if the Court assumed that such a claim is exempt from a general waiver, Jones's claim fails because his assertions do not give rise to an inference of prosecutorial misconduct and are not credible.

First, Jones contends that the Government "threatened to charge petitioner with additional charges [of obstruction or perjury] if the petitioner and his wife were to give testimony" during the sentencing hearing. See Jones's Motion under 28 U.S.C. § 2255 at 5. Specifically, Jones contends that his attorney and the Assistant United States Attorney came to an oral agreement as to the amount of time he would be incarcerated at the day of sentencing. See Jones's Motion in Support of Granting an Evidentiary Hearing at 11. Jones asserts that the Assistant United States Attorney

14

threatened him and his wife if they mentioned this "oral agreement" or the objections Jones had to the pre-sentencing report. The Court finds dubious Jones's contention of such conduct because he stated during the sentencing hearing that no such promises or threats were made to him. See Transcript of Jones's Sentencing Hearing on May 12, 2004 at 10. Furthermore, Jones's counsel submitted an affidavit which could substantiate Jones's assertion, but it mentions no such agreement. Although Jones's counsel's affidavit states that the Assistant United States Attorney told him that she would charge Jones and his wife with perjury if there were "variation[s] in their testimony,"[5] this is not misconduct. If Jones or his wife subsequently gives testimony contrary to a statement previously sworn to, this can be considered perjury and there is no misconduct in stating that perjury is a prosecutable offense. Just as the prosecutor is given discretion as to whether to file additional charges against the defendant in the pre-trial setting, see United States v. Williams, 47 F.3d 658, 661-62 (4th Cir. 1995), the prosecutor must also be given discretion to determine whether the defendant's conduct during an ongoing criminal case creates a reasonable basis for new criminal charges. No proof of actual or presumptive prosecutorial vindictiveness exists. Cf. Imbler v. Pachtman, 424 U.S. 409, 425, 96 S. Ct. 984, 47 L. Ed. 2d 128 ("[F]or a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.").

Second, Jones asserts prosecutorial misconduct because during the sentencing hearing, the probation officer that prepared the pre-sentencing report communicated with the court without Jones's counsel's participation. Whether or not this is misconduct, Jones suffered no prejudice from

---

[5] The word "paying" in the last sentence of the first paragraph of Jones's counsel's affidavit should be "perjury," as confirmed by Randy Jones.

15

such communication because it led to Jones being given a three point reduction for acceptance of responsibility which ultimately reduced the sentencing range for his crimes. The claim of prosecutorial misconduct has no basis for relief.

### 3. Jones's Claim that His Sentence was Miscalculated

Jones also claims that there was a "mis-computation of drug weight" which adversely affected his sentencing range under the Federal Guidelines. Petitioner asserts that this "brings up a Booker and Fanfan issue." See Jones's Motion under 28 U.S.C. § 2255 at 5. To the degree that this claims relies upon Booker and Fanfan for relief, the claim must be dismissed because the rule created in Booker is not "available for post-conviction relief for federal prisoners . . . whose convictions became final before Booker (or Blakely) was decided." See United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005).

When a defendant does not directly appeal a judgment of conviction, the conviction becomes final when the time for filing a direct appeal expires. See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). Jones's judgment of conviction was entered on May 12, 2004. Jones had ten days from that date to file an appeal to the court of appeals. FED. R. APP. P. 4(b). Since Jones did not directly appeal this judgment, his conviction became final on May 22, 2004.[6] Thus, Jones cannot rely on Booker for relief because his conviction became final before Booker (decided on January 12m 2005) or Blakely (decided on June 24, 2004) were decided.

## IV. Conclusion

Petitioner has failed to prove that he was incompetent to make a plea or that his procedural

---

[6] Jones could argue that he did not appeal because his counsel was defective in advising him not to directly appeal his conviction. This issue, however, is not before the Court.

16

right to a competency hearing was violated. Thus, the Petitioner's § 2255 motion based on a claim of incompetency to make a plea is **Denied**. Second, Petitioner's § 2255 motion based on ineffective assistance of counsel is **Denied**. Third, Petitioner's § 2255 motion based on prosecutorial misconduct is **Denied**. Fourth, Petitioner's § 2255 motion based on mis-computation of drug weight is **Dismissed**.

The Petitioner is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 60 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to Petitioner and to counsel of record for the respondent.

ENTER: This 9th day of January, 2006.

/s/ James C. Turk
Senior United States District Judge